UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL McCLAIN,<br>ANNE PRAMAGGIORE,<br>JOHN HOOKER, and<br>JAY DOHERTY | No. 20 CR 812<br><br>Hon. Harry D. Leinenweber |

GOVERNMENT'S RESPONSE TO
DEFENDANTS' JOINT MOTION TO STAY ALL PROCEEDINGS

The UNITED STATES OF AMERICA, by and through its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendants' joint motion to stay all proceedings. The government respectfully represents as follows:

BACKGROUND

On May 2, 2023, after approximately seven weeks of trial, a jury returned verdicts of guilty on all counts. The counts of conviction included charges premised on violations of 18 U.S.C. § 666(a)(1)(B) (Counts 1, 2, 5, 6, 8), as well as charges based on defendants' falsification of books and records at Commonwealth Edison and Exelon (Counts 1, 3, 4, 7, 9).

Several weeks ago, the Supreme Court granted *certiorari* to resolve a circuit split as to whether 18 U.S.C. § 666(a)(1)(B) criminalizes gratuities in addition to bribes. *Snyder v. United States*, Case No. 23-108, — S. Ct. —, 2023 WL 8605740 (Dec. 13, 2023). Based

on this development, the defendants ask this Court to stay sentencing pending the Supreme Court's decision, which is expected by the end of June 2024. R. 347.[1]

## ARGUMENT

Defendants' motion should be denied. Although the defendants have presumed victory for Snyder in the United States Supreme Court,[2] the Seventh Circuit's interpretation of § 666 is the reading consistent with the statute's text, structure, and history, and the Court properly instructed the jury consistent with that precedent. The Supreme Court has defined a gratuity as a "reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *United States v. Sun-Diamond Growers*, 526 U.S. 398, 406 (1999) (Scalia, J.) (unanimous decision). Justice Antonin Scalia thought it clear that the text of § 666 prohibited the payment of both bribes and gratuities, *Sorich v. United States*, 129 S. Ct. 1308, 1310 (2009) (dissenting from denial of *certiorari*), and the Seventh Circuit has held for many years (along with the majority of the courts of appeal to consider the issue) that the plain text of the statute, by using the exact same term "reward," covers gratuities as well. *See, e.g.*, *United States v. Boender*, 649 F.3d 650, 655 (7th Cir. 2011) (citing *Sun-Diamond*). Only two circuits are in the minority of the circuit split being considered by the Supreme Court. The weight of the authority supports the government's

---

[1] Defendants also ask the Court to defer deciding post-trial motions, but this portion of their motion is moot in light of the Court's denial several days ago of defendants' motions for acquittal and for a new trial. R. 357.

[2] Indeed, counsel argued that "[i]t is a *certainty* that the Seventh Circuit case law is going to change dramatically after *Snyder* . . . ." 01/04/24 Tr. at 5 (emphasis added). If the Supreme Court affirms the Seventh Circuit, then this is not a certainty at all.

interpretation of § 666. The defendants are therefore wrong to declare victory now, when a decision is still far off, about six months away. Until that time, the Seventh Circuit's precedent in this area stands undisturbed.

But even if the Supreme Court concludes that Justice Scalia, the pre-eminent textualist of his generation, the Seventh Circuit, and four other circuit courts of appeal had it all wrong, the defendants are still wrong to assume that a decision in favor of Snyder in the Supreme Court would affect their convictions. As an initial matter, each and every defendant was convicted on false books and records charges under the Foreign Corrupt Practices Act. The elements of an FCPA charge are not the subject of the *Snyder* case. The guidelines range for those charges are substantial, and in line with those for the § 666 charges. So it is nothing more than wishful thinking that those convictions are in jeopardy. *See* R. 357 at 34-48 (finding evidence sufficient to convict each defendant on FCPA counts).

Moreover, even with respect to the § 666 charges, this case is no different than any other, and it remains the case that the jury instructions, if they were in some way erroneous, are subject to harmless error analysis, *see, e.g.*, *Ryan v. United States*, 688 F.3d 845 (7th Cir. 2012) (conducting harmless error review, and finding instructional error harmless). If there was any error with respect to the charge given to the jury with respect to the § 666 counts, it can be addressed by the parties on appeal. And, if it becomes necessary, the defendants can explain how the instructions somehow gave rise to fatal error when defendants maintained in this Court that the government did not really even pursue a gratuity theory at trial (*See* R. 264 at 44), and given the substantial evidence of

3

*quid pro quo* bribery presented to the jury. *See United States v. Jordan*, No. 22-40519, 2023 WL 5521059, at *7-8 (5th Cir. Aug. 25, 2023) (finding harmless error even though jury instructions did not include *quid pro quo* as required in the Fifth Circuit, because "[a] review of the record in this matter establishes that there was sufficient evidence of a *quid pro quo*").[3]

---

[3]  On the subject of *quid pro quo*, the defendants have repeatedly said that proof of a *quid pro quo* is required under § 666. *See, e.g.,* R. 347 at 2 n.1. But in doing so, counsel for McClain has described the term *quid pro quo* as being the equivalent of requiring proof of an agreement between two parties concerning the corrupt exchange of benefits for action, *United States v. Madigan*, No. 22 CR 115 (N.D. Ill.) (Blakey, J.) [ECF#86 at 3 n.1], and counsel for Pramaggiore has also suggested that proof of an "agreement" is required. 01/04/24 Tr. at 7. This is incorrect; this misunderstanding is a result of casual and imprecise use of Latin jargon, namely, the phrase "*quid pro quo*," to mask what is really required by the plain English of § 666. While proof of such a meeting of the minds is *sufficient* to violate the statute, no proof of an "agreement" is *required* under either prong of § 666. The language of the statute—which defendants ignore—not only punishes those who "agree to accept" (§ 666(a)(1)(B)) and "agree to give," (§ 666 (a)(2)) but also anyone who "solicits" intending to be influenced or rewarded (§ 666(a)(1)(B)) and anyone who "offers" with intent to influence or reward (§ 666 (a)(2))—without regard to whether any mutual understanding is reached with the counterparty. 18 U.S.C. §§ 666(a)(1)(B) and (a)(2). *See, e.g.* Black's Law Dictionary (11th ed. 2019) (defining solicitation to include "The act or an instance of requesting or seeking to obtain something . . . Under the Model Penal Code, a defendant is guilty of solicitation even if the command or urging was not actually communicated to the solicited person, as long as it was designed to be communicated."); Oxford English Dictionary (online 2d ed. 1989, as modified as of December 2023) (defining solicit to include "To incite or move, to induce or persuade, to some act of lawlessness or insubordination," and providing example from 1565 of "To solicite mens minds and intice them with brybes."). Indeed, § 666 has two separate subsections, one covering each party to a corrupt transaction (those that corruptly solicit benefits on the one hand, and those that corruptly offer benefits on the other) for this precise reason. *Cf. United States v. Ring*, 706 F.3d 460, 467-68 (D.C. Cir. 2013) (no completed corrupt exchange or agreement is necessary for honest services fraud; the statute punishes the scheme, not its success); *United States v. Avenatti*, 432 F.Supp.3d 354, 365 (S.D.N.Y. 2020) (same). This, quite obviously, is not the issue that the Supreme Court granted *certiorari* to resolve; rather, the Supreme Court is expected to decide whether 18 U.S.C. § 666(a)(1)(B) reaches not only solicitations for bribes, but also solicitations for gratuities (neither of which require proof of an agreement or meeting of the minds).

4

In light of the weight of the evidence and the authority cited above, the defendants' effort to dress themselves up as victims—as those who the government has "done a terrible injustice to . . . by prosecuting them for conduct *that is not criminal*, irreparably and forever damaging their lives, careers, reputations, and relationships"—falls flat. R. 347 at 3. If anything, each defendants' misguided and unrepentant effort to shift the blame for their obvious wrongdoing—for trying to ply Michael Madigan with over $1 million in corrupt benefits and to cook the books to hide their scheme—demonstrates their unwillingness to accept responsibility for their own conduct and should be taken into account at sentencing. They are not the victims. The victims are the citizens of Illinois, who were deprived of their right to honest government as a result of defendants' efforts to rig the legislative process by bribing Madigan. And the fact that they still believe they did nothing wrong demonstrates a strong need for specific and general deterrence.

As the government noted in response to the defendants' earlier collective effort to delay sentencing before the *Snyder* case was accepted for review, the government and the public have a strong interest in finality and bringing this criminal case to a close. The defendants want this Court to wait more than an entire year after conviction to move forward with this case. There is no need to grind this case to a halt for another half year or more, and delay sentencings into the latter portion of this year. Indeed, the defendants would not be able to file their own appeal now to delay their sentencing; they should not be able to cause the very same delay because of an appeal in an unrelated criminal case. *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940) (Frankfurter, J.) ("To be

effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause. These considerations of policy are especially compelling in the administration of criminal justice. . . . . [E]ncouragement of delay is fatal to the vindication of the criminal law.").

The fact that there are significant counts of conviction not tied to *Snyder*, that is, the FCPA charges, on which defendants face sentencing means there is no substantive or practical reason why sentencing in this case should be held until the Supreme Court's decision. The defendants and the government can address what, if any, effect *Snyder* has on the *Snyder*-related counts on appeal. If the defendants' desire to remain on bond is one of the factors influencing their efforts to delay sentencing, this Court is free to consider motions for bond pending appeal in due course—keeping in mind, of course, that the *Snyder* decision will not implicate the FCPA charges. This Court should therefore deny the motion to stay proceedings or delay the sentencing dates.

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to deny the defendants' motion to stay proceedings and to set sentencing dates as soon as the Court's schedule permits.

        Respectfully submitted.

        MORRIS PASQUAL
        Acting United States Attorney

By:   /s/ *Amarjeet S. Bhachu*
        AMARJEET S. BHACHU
        DIANE MacARTHUR
        SARAH STREICKER
        JULIA K. SCHWARTZ
        Assistant United States Attorneys
        219 South Dearborn Street
        Fifth Floor
        Chicago, Illinois 60604
        (312) 353-5300